## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| WARREN RANCOUR,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC., and TRANS UNION LLC,<br><br>　　　　　Defendants. | **Case No.:**  0:20-cv-02371<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>1.  **FCRA, 15 U.S.C. §1681** *et seq.* |

NOW COMES Plaintiff Warren Rancour, ("Plaintiff"), by counsel, alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq. against Defendants Experian Information Solutions, Inc. ("Experian") and Trans Union LLC ("Trans Union"):

## INTRODUCTION

1.　　Plaintiff's Complaint arises from violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681 et seq. by Defendants.  Plaintiff contends Defendants failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer reports, and consequently reported inaccurate information about Plaintiff.

1

## **JURISDICTION AND VENUE**

2.      This Court has federal question jurisdiction because this action arises out of violations of federal law.  28 U.S.C. § 1331.  Jurisdiction is also proper pursuant to 15 U.S.C. §1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

3.      Venue in the District of Minnesota is proper pursuant to 28 U.S.C. § 1391 because Defendants regularly transact business within this District, is otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to the claims occurred in this District.

## **PARTIES**

4.      Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

5.      Plaintiff is a natural person who resides in the city of South Saint Paul in Dakota County Minnesota.

6.      Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. §1681a(c).

7.      Defendant Experian is a *credit reporting agency*, as defined in 15 U.S.C. § 1681a(f)).  On information and belief, Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing *consumer reports*, as defined in 15 U.S.C. § 1681a(d), to third parties. Experian's principal place of business is located at 475 Anton Boulevard, Costa Mesa, California 92626.

8.    Defendant Trans Union is a *credit reporting agency*, as defined in 15 U.S.C. § 1681a(f)). Upon information and belief, Trans Union is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing *consumer report*s, as defined in 15 U.S.C. § 1681a(d), to third parties. Trans Union's principal place of business is located at 555 West Adams Street, Chicago, Illinois 60661.  Trans Union can be served through its registered agent Prentice Hall Corporation, located at 801 Adlai Stevenson Drive, Springfield, Illinois 62703.

9.    During all time pertinent to this Complaint, Defendants were authorized to conduct business in the State of Minnesota and conducted business in Minnesota on a routine and systematic basis.

10.    Defendants regularly engage in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties. Defendants regularly furnish consumer reports to third parties for monetary compensation, fees and other dues, using means and facilities of interstate commerce, and is therefore a "consumer reporting agency," as defined by 15 U.S.C. §1681a(f) of the FCRA.

11.    During all time pertinent to this Complaint, Defendants acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

12.    Any violation by Defendants was not in good faith, was knowing, negligent, willful, and/or intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

3

## FACTUAL ALLEGATIONS

13.     Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

14.     Defendants report consumer information about Plaintiff and other consumers through the sale of consumer reports (credit reports).

15.     Defendants' credit reports generally contain the following information: (i) Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) Tradeline Information: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) Public Record Information: this section typically includes public record information, such as bankruptcy filings; and (iv) Credit Inquiries: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

16.     Defendants gain access to consumer information from various sources, including furnishers who provide consumer information to Defendants, and information Defendants independently source themselves or through third party providers/vendors or repositories, including computerized reporting services like PACER.

17.     The information reported by Defendants contribute to consumer creditworthiness, including their FICO Scores, which are calculated using information contained in Defendants' consumer credit reports.

4

18.     The vast majority of financial services lenders (e.g., banks, creditors, lender) rely upon credit reports, FICO Scores and other proprietary third-party algorithms – "scoring" models – to interpret the information in a credit report.

19.     These algorithms use variables or "attributes" derived from the credit report to calculate a "credit score," which ultimately determines consumer creditworthiness.

20.     FICO Scores factor the following: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

21.     Payment history refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late or missed.

22.     The more severe, recent, and frequent late payments are, the greater the harm to the FICO Score.

23.     In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently this occurred, and how many delinquent accounts exist. However, once a delinquent account has been remedied the longer the account stays current the more a consumer's FICO Score should increase.

24.     Defendants obtained and reported Plaintiff's consumer bankruptcy information in both the Public Records section of his consumer credit report, as well as individual account tradelines.

25.     Defendants had notice of Plaintiff's bankruptcy discharge through independent collection of consumer information as well as from information furnished by tradeline furnishers. Defendants reported Plaintiff's bankruptcy filing and/or discharge in

the public record section of their credit reports, as well as in individual account tradelines.

26.    Defendants are well aware that the effect of a discharge Order in a Chapter 7 Bankruptcy is to discharge all statutorily dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding.

27.    Information regarding whether a debt has been reaffirmed or successfully challenged through an adversary proceeding is retrievable from the same sources Defendants obtain the bankruptcy case information, as well as from information provided to Defendants from furnishers of account/tradeline information.

28.    Rather than following reasonable procedures to assure maximum possible accuracy, Defendants reports information regarding pre-bankruptcy debts even if that information ignores or contradicts information already known by Defendants, information provided by furnishers of account/tradeline information, or information contained in public court records that Defendants have obtained through its independent efforts, or could easily obtain through reasonably available public records.

29.    Defendants are on continued notice of their inadequate post-bankruptcy reporting procedures, including inaccurate balances, and account and payment statuses, through the thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints filed against it for its inaccurate reporting following a Chapter 7 discharge.

30.    In or around July 2015, Plaintiff obtained a vehicle with AmeriCredit/GM Financial.

31.     Subsequently, Plaintiff fell on hard times and could no longer afford to pay for the vehicle.

32.     In or around June 2016, Plaintiff Voluntarily surrendered the vehicle.

33.     Plaintiff filed for Chapter 7 Bankruptcy in October 2016 in the United States Bankruptcy Court for the District of Minnesota, case no. 16-33315.

34.     There were no objections during Plaintiff's Chapter 7 Bankruptcy, or proceedings to declare any debt "non-dischargeable" pursuant to 11 U.S.C. § 523 et seq. There were also no requests for relief from the "automatic stay" codified at 11 U.S.C. §362 et seq. while the Plaintiff's Bankruptcy was pending to pursue the Plaintiff on any personal liability for listed debts.

35.     Accordingly, Plaintiff received an Order of Discharge, discharging his personal liability on the dischargeable debts on January 23, 2017.

36.     Upon information and belief, following Plaintiff's Chapter 7 Bankruptcy, Defendants prepared one or more credit reports concerning Plaintiff. Defendant reported Plaintiff's Chapter 7 Bankruptcy case information, including the case number, court, filing date, and discharge date.

37.     Defendants also reported Plaintiff's credit history, including names of credit accounts, account numbers, account types, responsibility for the account (i.e., individual or joint accounts), the date the accounts were opened, status, and the date of the last status update.

38.     For accounts included in Plaintiff's Chapter 7 Bankruptcy, including collection accounts, Defendants are generally required to report the status of these debts

as discharged through bankruptcy, unless the furnishers provide information showing that a debt was excludable from discharge.

39.     Nevertheless, Defendants continued to report one or more accounts inaccurately, with several late payments between the time the bankruptcy petition was filed and when Plaintiff received the discharge, instead of accurately reporting the status of this pre-petition debt as included in or discharged in Chapter 7 Bankruptcy with a $0 balance.

40.     In or around September 2019, Plaintiff purchased a new home.

41.     Thereafter, Plaintiff's home insurance provider, nonparty Progressive Corporation ("Progressive") advised Plaintiff that his roof would was bad and must be replaced.

42.     Progressive also informed Plaintiff they would cancel his insurance policy by December 8, 2020, if Plaintiff did not replace his roof by then.

43.     Plaintiff sought insurance from other providers, like Insurance Brokers of Minnesota, and was similarly told his roof must be replaced to obtain coverage.

44.     Accordingly, Plaintiff applied for a home improvement loan with Heartland Credit Union ("Heartland") as Plaintiff could not afford to repair his roof without a loan.

45.     Heartland advised Plaintiff his application for a home improvement loan was denied because the reporting of his AmeriCredit/GM Financial Account, ("Account") account no. 017104XXXX opened in July 2015 on his credit reports.

46.     Experian was reporting the Account inaccurately.

47.     Experian reported the Account as Voluntarily Surrendered with a Balance of $5,284.

48.     Experian began reporting the Account as Voluntarily Surrendered in June 2016.

49.     The Account was included in Plaintiff's bankruptcy and discharged on January 23, 2017.

50.     Trans Union also reported the Account inaccurately.

51.     Trans Union was reporting the Account with a Balance of $5,284, an account Condition of "Derogatory", and Remarks "Voluntary repossession".

52.     Defendant's reporting was inaccurate and remained inaccurate. Defendants reported an outstanding balance when the balance was in fact $0, and also reported an inaccurate status of the account/debt despite their knowledge that Plaintiff's bankruptcy discharged that debt.

53.     Notably, the other national consumer reporting agencies Equifax did not *inaccurately* report the Account, as Experian and Trans Union did.

54.     Upon information and belief, and in the alternative, Defendants also had notice of AmeriCredit/GM Financial's unreliable procedures to properly update the reporting of pre-Chapter 7 debt upon discharge of a bankruptcy, and may therefore have reported information contradicted by Defendants' own records and knowledge of Plaintiff's bankruptcy discharge.

55.     Defendants are inaccurately reporting that Plaintiff owes money on the discharged Account, and also report inaccurate statuses of the Account, thereby damaging his credit utilization.

56.     Defendants inaccurately reported the status of these debts, even though the debts are in fact discharged, Plaintiff is no longer personally liable for the debts, and Defendants have actual knowledge Plaintiff filed for and received a Chapter 7 Bankruptcy discharge.

57.     Consequently, Plaintiff suffers damages, including credit harm, loss of credit opportunity, credit denials, and other financial harm.  Plaintiff also suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

58.     Upon information and belief, Plaintiff applied for and was denied credit for a home improvement loan due to Defendant's inaccurate reporting which was published to each creditor in their review of Plaintiff's application.

## COUNT I
## Violations of the FCRA, 15 U.S.C. § 1681e(b)

59.     Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

60.     The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the

efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

61.    Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

62.    The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

63.    The FCRA requires consumer reporting agencies like Defendants to follow reasonable procedures to assure maximum possible accuracy of consumer information.

64.    Defendants negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of information pertaining to discharged debts that arose prior to and were included in the consumer's bankruptcy.    Defendants also report inaccurate information when that information is contradicted by information known by Defendants, reported to Defendants, or reasonably available to Defendants.

65.    Consequently, Defendants routinely report inaccurate, and materially misleading information about Plaintiff, without verifying the accuracy of this information, or updating this information as required by § 1681(e)(b) when Defendants possess information inconsistent with the reported information, and possess information establishing that the reported information is in fact inaccurate.

66.     Defendants possess information from which they know the reported information is inaccurate, as Defendants include the date the consumer filed bankruptcy, know whether the consumer obtained a bankruptcy discharge from their own affirmative efforts to procure this information or from tradeline furnishers, and also know the date the inaccurate tradeline account/debt arose or was otherwise opened by the consumer.

67.     Defendants knew or should have known of their obligations under the FCRA, especially pertaining to discharged debts. These obligations are well established by the plain language of the FCRA, in promulgations of the Federal Trade Commission, well-established case law, and in prior cases involving Defendants from which Defendants are on notice of their unreasonable procedures.

68.     Defendants have obtained or has available substantial written materials that apprised Defendants of duties and obligations mandated by the FCRA, including where consumers file for Chapter 7 Bankruptcy.

69.     Defendants are well aware that the effect of a discharge Order in a no asset Chapter 7 Bankruptcy is to discharge all statutorily dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding.

70.     Defendants regularly conduct voluntary public records searches with the intention of including bankruptcy information on the credit reports it sells to other parties.

71.     Defendants voluntarily conducted public records searches and obtained information about Plaintiff's bankruptcy filing and bankruptcy discharge to report this information in their consumer credit reports.

72.     The diligence Defendants exercise in recording consumer bankruptcy filings is not replicated in Defendants' reporting of the effect of the bankruptcy upon consumer debts, including the bankruptcy discharge.

73.     Despite knowledge of their legal obligations, Defendants acted willfully in consciously breaching known duties and deprived Plaintiff of her rights under the FCRA.

74.     Defendants violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to ensure maximum possible accuracy of Plaintiff's consumer disclosure.

75.     Defendants possess information from which Defendants should know the reported information is inaccurate, as Defendants include the date the consumer filed bankruptcy, whether the consumer obtained a bankruptcy discharge, as well as the date the inaccurate tradeline account/debt arose or was otherwise opened by the consumer.

76.     Defendants are also on notice from other account tradelines reported by Defendants that indicate those accounts were included in/discharged in bankruptcy.

77.     Defendants are well aware that discharged debts should not be reported as late, past due, or with an outstanding balance after the debt is discharged.

78.     In this case, the inaccurately reported debts pertain to AmeriCredit/GM Financial debts that Defendants knew was several years old, which predated Plaintiff's Chapter 7 Bankruptcy, was not reaffirmed or otherwise excluded from the discharge, and was discharged in fact by Plaintiff's Chapter 7 Bankruptcy.

79.     Alternatively, Defendants were negligent, entitling Plaintiff to recover damages pursuant to 15 U.S.C. § 1681o.

80.     Defendants' inaccurate and negative reporting damaged Plaintiff's creditworthiness, as Defendants report the existence of a large debt after the filing of the petition on accounts that were included in Plaintiff's Chapter 7 bankruptcy.

81.     Defendants are a direct and proximate cause, as well as a substantial factor in causing actual damages and harm to Plaintiff, including, but not limited to, credit denials, embarrassment, anguish, and emotional and mental pain. Consequently. Defendants are liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 et seq.

82.     Plaintiff suffers damages, including credit harm, loss of credit opportunity, credit denials, and other financial harm.  Plaintiff also suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against Defendant for the following:

Fair Credit Reporting Act Violations

(a)     An award of actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) or 1681o(a)(1);

(b)     An award of statutory damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

14

(c)     An award of punitive damages, as allowed by the Court pursuant to 15 U.S.C. § 1681n(a)(2),

(d)     Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) and § 1681o(a)(2); and

(e)     Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

## JURY DEMAND

Plaintiff hereby demands jury trial on all issues so triable.

RESPECTFULLY SUBMITTED this 23rd day of November 2020,

**PRICE LAW GROUP, APC**

By: *s/Jenna Dakroub*
Jenna Dakroub
Bar Number: 0401650
*Attorneys for Plaintiff, Warren Rancour*
**Price Law Group**
8245 N. 85th Way
Scottsdale, AZ 85258
Telephone: (818) 600-5513
Fax: (818) 600-5413
E: jenna@pricelawgroup.com